Wiuliams, J.
 

 Some interesting questions have arisen on the pleadings and the! opening statement of plaintiff’s counsel to the jury.
 

 A motion was filed to the original petition and sustained ; thereupon an amended petition was filed. This
 
 *4
 
 amended petition sets forth that defendants Thomas Gregory and Irving Goldberg were the owners of an automobile and that “the Defendants’ automobile was caused to turn sharply to its left, or to the north on Oak Hill Avenue and before the same reached or passed beyond the center of Oak Hill Avenue and Kenmore Avenue [street], and before this Plaintiff had any knowledge or warning of its intention to so turn and before he could escape from its path, wrongfully, negligently and illegally and with great force struck the body of this Plaintiff hurling him to the pavement. As a result of which collision and being with great force hurled to the pavement, directly and proximately operating through the carelessness and negligence of the Defendants, this Plaintiff received the following injuries.” The petition then fully sets out the injuries.
 

 ' Each of the defendants filed a separate answer to the amended petition and the cause came on for trial. After the jury had been sworn and before the opening statements were made, the defendants moved for judgment on the pleadings on the ground that the amended petition did not state a cause of action against either defendant. This motion was overruled and it is contended that such action constituted prejudicial error. While the language of this pleading is awkward and inartificial, giving it the liberal construction required by the code of civil procedure, we think it pleads negligence of the defendants in operating the automobile and that such- negligence was the proximate cause of the plaintiff’s injuries. Thereupon counsel for plaintiff made his opening statement to the jury and at the conclusion thereof a motion was made for judgment on the statement and was overruled by the court. What counsel said in this statement is omitted from the bill of exceptions; therefore the question is not squarely presented. A motion was also made to require the plaintiff to elect against which defendant he would proceed and the trial judge reserved his
 
 *5
 
 ruling thereon until after the introduction of plaintiff’s evidence.
 

 At the close of the plaintiff’s case, plaintiff upon leave dismissed the action as to the defendant, Gregory; at the same time plaintiff with leave filed the second amended petition against the defendant, Goldberg, alone, alleging agency as heretofore stated. To the action of the court allowing the filing of the amended pleading, counsel for such defendant objected and took exception. The transaction pleaded therein was the identical one set up in the original petition and in the amended petition. In our judgment the second amended petition does not set forth a new or different cause of action against the defendant and the filing of it was wholly within the discretion of the court.
 

 It is apparent from the evidence adduced by the plaintiff that Gregory was the agent of the defendant Goldberg, and that there was a misjoinder of parties defendant in the original and first amended petitions. No evidence was adduced to show that the alleged act of negligence was committed either in the presence of the defendant, Goldberg, or by his express direction, and the only theory upon which such defendant could be made liable was under the doctrine of
 
 respondeat superior;
 
 so it would have been the duty of the court, had the plaintiff continued to stand on the amended petition, to sustain defendant’s motion for an election and require the plaintiff, at the conclusion of his evidence, to elect against which defendant he would proceed.
 
 Clark
 
 v. Fry, 8 Ohio St., 358, 72 Am. Dec., 590; French,
 
 Admr.,
 
 v.
 
 Central Construction Co.,
 
 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A. (N. S.), 669.
 

 As the plaintiff dismissed the action against Gregory and filed the second amended petition against the defendant, Goldberg, alone, the demand for election was rendered nugatory.
 

 Obviously the trial court made all such rulings in accordance with the established principles of practice.
 

 
 *6
 
 It is contended that the trial court erred in not directing a verdict for the defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law. The duty of plaintiff after entering the highway and getting in the middle of the street is regulated by principles of the common law and he was compelled to exercise ordinary care for his own safety under the surrounding circumstances.
 

 Plaintiff testified that he was going west on the crosswalk on the north side of the intersection and had just gotten beyond the center of the street and near the rail of the street car track when the accident happened. His own words are: “I got beyond the center of the street and just in the act of taking a step beyond the west rail. I was watching for traffic on the right because I was on that side of the street, and just as I turned to see what traffic may be coming on Kenmore, because I was going to cross Kenmore, I happened to turn around, and as I happened to turn around the machine was on top of me. I was in the act of stepping like this and I couldn’t get out of the way because I was off of balance. ’ ’
 

 The witness, David Warner, testified that Gregory in operating the automobile was making a turn to his left from Kenmore street into Oak Hill avenue and did not go around the center of the intersection but “cut the corner” and went to the left of it, hitting the plaintiff. Gregory himself testified that he neither saw plaintiff nor knew of his presence until he felt the jar of the automobile hitting him. There was also evidence tending to show that the headlights on the automobile were not on and that no warning was sounded. The plaintiff had the right in the exercise of ordinary care to assume that the driver of the automobile would obey the law (Section 6310-24, General Code) and turn in the required way. In fact plaintiff was looking back for approaching automobiles on Kenmore street at the time, and, although a vehicle might approach from
 
 *7
 
 any of four directions lie could only look in one direction at a time.' Plaintiff, though, required to exercise ordinary care, had a right to proceed across the street at the crosswalk in the ordinary manner. ‘ ‘ Ancient rights have not changed because new vehicles of travel have been introduced upon the streets, nor because a portion of the people who ride, being in haste to reach their destination, demand rapid transit. The streets remain for all the people, and he who goes afoot has the right, especially at a crossing, to walk to his destination ; he should not be compelled to run, or to dodge and scramble, to avoid collision with vehicles.”
 
 Cincinnati Street Ry. Co.
 
 v.
 
 Snell,
 
 54 Ohio St., 197, 204, 43 N. E., 207, 209, 32 L. R. A., 276, 278. It cannot be said the plaintiff was guilty of contributory negligence as a matter of law.
 

 It is furthermore contended that there was no evidence showing that Gregory was the authorized agent of Goldberg acting within the scope of his authority, and for this reason also a verdict should have been directed for the defendant. There is competent evidence in the record to show that the former was employed by the latter to drive the automobile for him during the day on a business trip and on their return they went to the employer’s home. He owed Gregory an amount less than $5.00 for work done and in order to pay him gave him a five dollar bill to get changed. He went away driving the car used that day and, when he came back, he gave the change to Goldberg and was paid his wages. While operating the car on this trip he ran into the plaintiff and injured him.'
 

 The following appears in the testimony of Thomas Gregory:
 

 ‘ ‘ Q. And when you got back to the house, Mr. Goldberg gave you a bill to get changed? A. Yes, sir.'
 

 “Q. Do you know how much of a bill it was? A. I think it was $5 as near as I can remember.
 

 “Q. Was there anything said between you as to how
 
 *8
 
 much he was to pay you for this work? A. No, I worked for Mr. Goldberg and wasn’t working every day, it would be, I drove a truck.
 

 “Q. Do you know whether he had no change to pay you when you got back? A. That is right. * * *
 

 “Q. And after the accident you took the money down to Goldberg and split the money up? A. No, sir.
 

 “Q. What happened? A. I took the man to the hospital.
 

 “Q. You went back then to Goldberg’s? A. No, I took him home.
 

 “Q. Then you went to Goldberg’s? A. Yes, sir.
 

 “Q. When you got back to Goldberg’s you gave him the change and he gave you what he had agreed to pay? A. That is right.”
 

 And on cross-examination:
 

 “Q. Now, Mr. Goldberg gave you this money you were supposed to go out and get changed, didn’t he? A. Yes.
 

 “Q. And told you to go get it changed? A. He didn’t exactly tell me to get it changed.
 

 “Q. Do you remember this question being asked you, ‘Tell me how you came to get this money changed? Did he give you the money?’ Referring to Mr. Goldberg, and your answer was ‘Yes’? A. Yes, he gave it to me.
 

 “Q. ‘Q. What did he tell you to do with it? A. Told me to go up and get it. Q. Tell you where to go to get it changed? A. No, he said, “Go up to the store and get it changed.” ’ Do you remember those questions and answers ? A. Yes.
 

 “Q. And you so answered those questions in this depositions? A. Yes.
 

 “Q. And the next question, ‘Tell you to take the car and go up and get it changed? A. Yes, sir, he knew I had his car’? A. Yes, that’s right.”
 

 And on recross-examination:
 

 
 *9
 
 “Q. He didn’t tell you to go to any particular store, did he? A. No, not exactly.
 

 “Q. You went up to the gasoline station and got the five-dollar bill changed and were on the way home to split up the money when the accident happened? A. We weren’t going to split the money.
 

 “Q. You were going to give him the money and he was going to give you what you had coming? A. That’s right.”
 

 The following appears in the testimony of Goldberg:
 

 “Q. And after he got the change, what was he going to do? A. After he got the change he was going to come back, and whatever he had coming I was going to give him and the balance was mine, and he was going to take the bus and go home. ’ ’
 

 And on cross-examination, Goldberg testified:
 

 “Q. And on the day in question after you had gotten back home from your trip with Mr. Gregory, you gave bim a five-dollar bill to take out and get changed so that you could pay him? A. Yes.”
 

 From this testimony the jury might well draw the inference that the driver was directed by the defendant, Goldberg, to go in the car controlled and used by the latter and get the five dollar bill changed for him so that he could pay the wages therefrom. It is also fairly inferable from this testimony that in performing this errand the driver was acting as agent of such defendant within the scope of his employment. The evidence was such that the question of agency was one for the jury under proper instructions of the court.
 

 There is no prejudicial error apparent on the face of the record and the judgment will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, 0. J., Stephenson, Matthias, Day and Zimmerman, JJ., concur.
 

 Jones, J., not participating.