dence, and that substantial justice has been accomplished herein.

*Judgment affirmed.*

FUNK, P. J., and WASHBURN, J., concur.

WENZLANSKI, ET AL. D. B. A. AKRON-KANSAS CITY MOTOR FREIGHT CO., *v.* ALLEN, ADMR., ET AL.
ALLEN, ADMR., *v.* BURDETTE ET AL.

(Decided January 28, 1936.)

*Messrs. Howell, Roberts & Duncan* and *Messrs. Motz & Morris,* for plaintiffs in error William Wenzlanski, et al. etc.

*Mr. Edward N. Heiser* and *Messrs. Burroughs & Burroughs,* for defendant in error and plaintiff in error Edward L. Allen, administrator.

*Messrs. Waters, Andress, Wise, Roetzel & Maxon,* for defendants in error Charles F. Burdette and Federal Express, Inc.

WASHBURN, J. Edward L. Allen, administrator of

the estate of Kepple Barrett, brought an action to recover damages for the wrongful death of Barrett, the action being against Charles F. Burdette, who was the owner and driver of a loaded tractor and trailer in which Barrett was riding as a guest at the time he received the injuries from which he died, and against the Federal Express Company, Inc., which was engaged as a common carrier in the transportation of freight by trucks operated upon the highways —said Burdette tractor and trailer having been operated under a permit issued to the Federal Express Company by the Public Utilities Commission of Ohio, and also against William Wenzlanski, who was the owner and driver of a loaded tractor and trailer, and William C. Grolbert doing business as Akron-Kansas City Motor Freight Company, whose business also was that of a common carrier in the transportation of freight by trucks operated upon the highways— said William Wenzlanski's tractor and trailer having been operated under a permit issued to William C. Grolbert by the Public Utilities Commission of Ohio.

Said tractors and trailers will be hereinafter referred to as the Burdette outfit and the Wenzlanski outfit.

Said outfits, while being operated in opposite directions, collided upon a bridge, causing the bridge to collapse and precipitating the Burdette outfit into the stream below, and at the time of said collision said Barrett was riding in the seat by the side of said Burdette. The record does not justify the conclusion that said Barrett was in any wise negligent.

The collision occurred at night, and each of said drivers was entirely familiar with said narrow bridge, and there were proper signs at a proper distance from each end of the bridge indicating that the bridge was too narrow for two such outfits to pass on it. It was a clear night, the pavement was dry, each outfit was equipped with the lighted lights which were required

for such equipment, the brakes on each outfit were in proper working condition, and the view on each side of the bridge was such that each driver could see the other approaching for a considerable distance.

The record fully justifies a finding that each driver saw the other outfit approaching, and knew and appreciated by the marker or clearance lights on the outfit of the other that the bridge was too narrow to permit said outfits to pass between the sides of the bridge, the combined width of said trailers being five inches wider than the clearance between the sides of said bridge.

The evidence offered in behalf of the Burdette outfit was such as to indicate that the collision was due entirely to the negligence of the Wenzlanski outfit, and the testimony in behalf of the Wenzlanski outfit was such as to indicate that the collision was caused solely by the negligence of the Burdette outfit, and the record is such that the jury could not very well do otherwise than find in favor of one of said outfits and against the other.

The jury found in favor of the Burdette outfit and against the Wenzlanski outfit, and judgment was entered for a substantial sum against the two defendants in the Wenzlanski outfit.

The Wenzlanski outfit filed a petition in error seeking to reverse the judgment against them, and said administrator filed a petition in error seeking to reverse the judgment against him and in favor of the Burdette outfit, and said petitions in error have been submitted together in this court.

We do not deem it necessary to say with reference to the administrator's petition in error anything further than that we find no such error in the record as would justify a reversal in said administrator's favor.

One of the errors claimed by the Wenzlanski outfit is that the judgment is not supported by sufficient evidence and is against the weight of the evidence.

On that claimed error we find against the Wenzlanski outfit.

Another error claimed by the Wenzlanski outfit is the ruling of the court as to the admissibility of certain impeaching evidence.

We are inclined to the opinion that the witness should have been permitted to answer the question, but considering all of the evidence as shown by the record we are clearly of the opinion that such error was not prejudicial.

Another error complained of by the Wenzlanski outfit is as to what the court said to the jury in its general charge with reference to a violation of Section 7249, General Code. The court read the statute, including the part which said that a greater rate of speed than that provided therein should be prima facie evidence of a speed that was greater than reasonable or proper, and followed that with language that is not to be commended; but under the record in this case we are clearly of the opinion that taking into consideration all that the court charged on that subject there was no prejudicial error.

Complaint is also made by the Wenzlanski outfit of a charge given before argument, to the effect that if the jury should find certain facts to be as contended for by the Burdette outfit then the Burdette outfit should not be liable.

There is evidently a slight omission in said charge, but it is not such as is prejudicial to the Wenzlanski outfit.

We come now to the important error complained of by the Wenzlanski outfit, and that is the failure of the court to grant the motion of Wenzlanski and Grolbert, the latter being the other defendant in said outfit, made at the end of plaintiff's case and renewed at the end of all of the evidence, to have the court require the plaintiff administrator to elect as to which

of said two defendants he would proceed against, the claim being that there was a misjoinder of defendants.

Such claim is based upon the assumption that Grolbert, under whose license the Wenzlanski car was being operated, was liable, if at all, only because Wenzlanski was the servant of Grolbert, or that the relationship between them was that of principal and agent, and that therefore the liability of Grolbert could arise only under the doctrine of *respondeat superior.*

If the relationship between Wenzlanski and Grolbert was not such as to give rise to the doctrine of *respondeat superior,* they could be sued together, and it was not error to overrule the motion to require the administrator to elect which of them he would pursue.

The first case establishing the principle that an action could not be maintained jointly against a master and servant, or jointly against a principal and agent, for tort committed by the servant or agent, for which the principal or master is liable, if at all, only because he is liable for what the servant or agent did, is the case of *Clark* v. *Fry,* 8 Ohio St., 358, 72 Am. Dec., 590, which was followed in the case of *French, Admr.,* v. *Central Construction Co.,* 76 Ohio St., 509, 81 N. E., 751, 12 L. R. A. (N. S.), 669, and which, together with the *French, Admr.,* case, is recognized in the opinion in the recent case of *Goldberg* v. *Jordan,* 130 Ohio St., 1, 196 N. E., 775; but none of these cases presented a situation such as is presented by the record in this case.

There is no dispute in the evidence as to the arrangement that existed between Wenzlanski, and Grolbert doing business as Akron-Kansas City Motor Freight Company. Grolbert entered into a contract with a shipper, by which he agreed to transport, as a common carrier, the property which was being hauled on the Wenzlanski truck at the time of the collision. After he had made such contract, he proposed to

Wenzlanski that he should use his truck, operating the same at his expense, over a route of his own choice, to carry out said common carrier contract of shipment, and that the two of them would divide, in a certain proportion, the proceeds derived from the transportation of said freight. If the freight was not collected, each one lost the time, effort and expense he put into the venture.

This was a single business venture for profit. There were a number of truck owners with whom Grolbert made like arrangements from time to time, as he obtained similar shipping contracts, each transaction being separate from the others and there being no obligation between Grolbert and Wenzlanski, or between Grolbert and any of the other truck owners, to enter into other similar transactions. Grolbert held himself out to the public as a common carrier, and, as a common carrier, made contracts with shippers and collected and disbursed the freight charges in accordance with the several arrangements made between himself and the several truck owners; and he filed with the Public Utilities Commission of Ohio a liability insurance policy by which *he,* as a common carrier, was insured "against loss sustained by reason of the death of or injuries to persons * * * resulting from the negligence of" such common carrier in the use of said individually-owned trucks on the public highways, and also filed with the Public Utilities Commission of Ohio the freight cargo insurance policy required by law from such common carriers, and obtained from the Public Utilities Commission of Ohio a permit to use the Wenzlanski tractor and trailer on the highways for the transportation of freight, and paid to the commission a fixed price a day for such use of the highways, as required by law of such common carriers. Wenzlanski had no contact or connection whatever with the Public Utilities Commission of Ohio, and no direct contract relation with shippers

of freight, but he reimbursed Grolbert for the cost of such liability insurance and freight cargo insurance and the tax exacted by the state "for the repair and maintenance of the highways" based upon the use of the same by said Wenzlanski tractor and trailer in the transportation of said freight.

We hold that, in the transaction in question, the relationship between Grolbert and Wenzlanski was not that of master and servant, nor of principal and agent, but was that of joint adventurers.

It should be observed that the instant case is not like those cases where transactions are claimed to be "joint enterprises" when there were no businesses nor profits or losses or other essential elements of partnerships involved. In such cases it has been held that in order that the negligence of one shall constitute the negligence of each there must be not only a community of interest in the transaction, but also evidence that the parties have an equal right to direct and govern the movements and conduct of each other with respect thereto.

In a joint adventure, where the facts are such as to create a relationship in a single transaction similar to a partnership, no such evidence is necessary, for in such case the liability of joint adventurers as to third parties, for torts in carrying out the adventure, is that of joint principals.

"1. A joint adventure is an association of two or more persons to carry out a single business enterprise for profit. * * *

"4. The rights and liabilities under a joint adventure are tested by the same rules that govern partnership." *Keiswetter* v. *Rubenstein* (235 Mich., 36, 209 N. W., 154), 48 A. L. R., 1049.

See also: *Ellingson* v. *World Amusement Service Assn., Inc.,* 175 Minn., 563, 222 N. W., 335; *Stroher* v. *Elting,* 97 N. Y., 102, 49 Am. Rep., 515; *Jackson* v. *Hooper,* 76 N. J. Eq., 185, 74 A., 130; *Bedwell Coal Co.*

v. *State Industrial Comm.*, 157 Okla., 227, 11 P. (2d), 527; *Langdon* v. *Kennedy, Holland, DeLacy & McLaughlin,* 118 Neb., 290, 224 N. W., 292, 63 A. L. R., 896.

The relationship between joint adventurers is that of joint principals, neither one being superior or subordinate to the other, and the liability of joint adventurers does not depend upon the right of one to control or direct the movements of the other—the relationship being, so far as the question now under consideration is concerned, not that of agency in the sense of one acting for or in the place of another by authority from him, but rather an agency only in the limited sense that a partner may be said to be an agent of the other partners, which is not the relationship of principal and agent, because there is no superior and no subordinate, one partner not having the right to control the acts of another partner unless there is an agreement to that effect.

"Sec. 14. Control By Principal. * * *

"Comment: * * *

"c. There are many relationships in which one acts for the benefit of another which are to be distinguished from agency by the fact that there is no control by the beneficiary. * * * The partnership relationship, while having many of the characteristics of the agency relationship, differs from it in that a partner's power to bind his co-partner is not subject to the co-partner's right of control unless there is an agreement to that effect." 1 Restatement of the Law of Agency, pages 48-49.

Being joint principals, they are liable to third parties jointly and severally for the torts of each other in carrying out such joint adventure, and they are not liable on the principle of *respondeat superior.* 1 Bates' Law of Partnership, Section 471, page 489.

Applying this law to the undisputed facts with reference to the transaction in question, we conclude that

the trial court did not err in overruling said motion to elect.

Finding no prejudicial error in the record, the judgment against Grolbert and Wenzlanski is affirmed.

*Judgment affirmed.*

FUNK, P. J., and STEVENS, J., concur.