Allen, J.
 

 In considering whether the pedestrian, Addison D. Cox, plaintiff below, was guilty of contributory negligence as a matter of law, all facts in the record, or inferences to be drawn therefrom, must be resolved in his favor.
 
 Gibbs v. Village of Girard,
 
 88 Ohio St., 34, 40, 102 N. E., 299;
 
 Ellis & Morton
 
 v.
 
 Ohio Life Ins. & Trust Co.,
 
 4 Ohio St.,
 
 *249
 
 628, 64 Am. Dec., 610;
 
 McDonald
 
 v.
 
 City of Pittsburgh,
 
 278 Pa., 485, 123 A., 467.
 

 Examining the evidence with this rule in mind, we find that the record discloses that at the time of the accident the pedestrian was crossing the Eighth street viaduct in Cincinnati, Ohio, from north to south, at a point in the viaduct where certain steps lead up from Eighth street to the top of the viaduct, at-the place generally used by pedestrians for crossing the viaduct to board street cars. Approximately twenty-five feet west of the landing of the steps, on each side of the viaduct, there is a pole which indicates the stopping place of trolley cars traveling east and west, respectively. The pedestrian was hit by the automobile as the automobile was traveling west and as the pedestrian was crossing from north to south, from the steps leading up to the viaduct, in order to board a street car which had already come to a stop, on the south side of the viaduct. When struck, according to the testimony of one witness, the pedestrian had reached the south rail of the west-bound street car track. According to the plaintiff’s own testimony, he had reached perhaps even to the space between the inbound and the outbound track. The testimony of one witness is to the effect that after the' accident Cox said that he “tried to beat it across.”
 

 The record discloses that the pedestrian looked in both directions before he started across the street. As his testimony states, he “sized up the situation.” He was hit by the left front fender of the defendant’s automobile. Floyd Breeze, a witness on behalf of the plaintiff, estimated that the speed of the
 
 *250
 
 automobile was thirty-five or forty miles an hour. Earl Fenley said:
 

 “Well, it looked as though he was driving somewhere around thirty-five miles is my estimate of how fast he was driving.”
 

 The testimony of Addison D. Cox, the plaintiff, was that the car was sixty-five to eighty feet from him when he started across. He said:
 

 “I came up the steps as the train was going past about 15 minutes past <3, and walked up to the landing and usually sized up the situation, rather the traffic, across the street, and picking my way to get across. Well, I got up to the landing, and I sized up the situation, I made a survey of the situation, looking up and down the street, and there was a street car across the street which had come to practically a dead stop, and then I started across as 1 had picked my way before, as I say, and only done the same thing on this afternoon as I had done before, and I looked down that way [indicating] for traffic coming, and I saw what looked like there was three lights — I didn’t count them because I wasn’t anticipating anything — and they looked like they were some sixty-five to eighty feet on down that way, and I didn’t know would the car stop because I was on the wrong side of the street to flag the car, but I saw it stopped, and I started across to the car, and of course it would be necessary to go around the end to get into the car, and I started in at a fast walk, thinking possibly somebody would get off and I might get on the car, you know. I had gotten to a point somewhere about probably the space between the two tracks, over the south rail of the north
 
 *251
 
 bound [outbound] track, right along in there somewhere, when I was struck. ’ ’
 

 Cox testified that he could not estimate the speed of the automobile, and that he had walked about sixteen feet — from the north curb to the south rail of the outbound track — before he was struck. The accident occurred at about 6:30 o’clock in the evening, when traffic was heavy upon the viaduct.
 

 It is the contention of the plaintiff in error that Cox was guilty of negligence as a matter of law because he stated upon the trial that when he walked across the street he looked in the direct path that he was going. Plaintiff in error urges that it is the duty of the pedestrian, after leaving a position of safety, to continue to observe, or at least to look again toward, an automobile known by him to be approaching. No decision from this state is quoted to sustain this position that a pedestrian is guilty of negligence, as a matter of law, if he, after having looked once and plainly seen an automobile sixty-five to eighty feet away, and having judged that he has time to pass in front thereof, proceeds across the street without again looking toward the automobile. Moreover, the general rule is 'that:
 

 “Not only may one cross a street in front of a moving vehicle without his negligence being conclusively established, but it is also held that he need not, as a matter of law, constantly watch the vehicle.” Huddy on Automobiles (8th Ed.), 611, Section 576;
 
 Bellinger
 
 v.
 
 Hughes,
 
 31 Cal. App., 464, 160 P., 838;
 
 Harker
 
 v.
 
 Gruhl,
 
 62 Ind. App., 117, 111 N. E., 457;
 
 Carradine
 
 v.
 
 Ford, Jr.,
 
 195 Mo. App., 684, 187 S. W., 285;
 
 Knapp
 
 v.
 
 Barrett,
 
 216 N. Y., 226, 110 N. E., 428.
 

 
 *252
 
 The decisions from other jurisdictions, which plaintiff in error claims support his view, do not in general sustain his argument. Certain of the cases cited by plaintiff in error involve records which show that the pedestrian did not look at all immediately before starting to cross the street. The decisions of this court cited by the plaintiff, in error deal for the most part with cases of injury inflicted by a railroad train or a traction car. Without discussing these cases in detail, we simply observe that the law applicable to accidents at railway crossings is not in every particular applicable to accidents between automobiles and pedestrians. A railway train runs upon its own right of way and cannot deflect its course. An automobile runs upon the public highway, and is able to deflect its course. As a matter of fact, the law does not say how often the pedestrian must look, or precisely how far, or when, or from where. If he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again.
 
 Knapp
 
 v.
 
 Barrett, supra.
 

 The plaintiff in error also maintains that Cox was guilty of contributory negligence as a matter of law, because, as he claims, Cox stepped in front of the machine and walked blindly into danger. This fact,, however, was not conceded, and the evidence upon that point was conflicting. Cox saw the approaching automobile. He deliberately estimated that he had time to cross the street in front of the machine and how near his conclusion came to being true is shown by the fact that he was struck by the left front fender of the machine after he had crossed at least to the south rail of the first track. In this connec
 
 *253
 
 tion, plaintiff in error urges that the statement attributed to Cox, that he tried to “beat it across,” amounts to'an admission on his part that he was guilty of contributory negligence. It is not certain from the record whether in making this statement Cox meant that he tried to beat the automobile across, or whether he was using the phrase in its vernacular sense and simply meant that he tried to hurry across. At all events, this statement, which for the purposes of this decision must be conceded to have been made by Cox, was one of the circumstances which should have been submitted to the jury for consideration, together with the other evidence. Knowing that the automobile could swerve out of its course, Cox had the right to assume that it would not continue in its path and deliberately run him down. It is negligence for a driver of an automobile, having ample space to pass a pedestrian on the highway, so to guide his vehicle as to strike the pedestrian in passing.
 
 Schock
 
 v.
 
 Cooling,
 
 175 Mich., 313, 141 N. W., 695. The statute provides that a rate of speed greater than fifteen miles in the business portion of the city, or greater than twenty-five miles per hour in the other portions of the city, shall be prima facie evidence of a rate of speed greater than reasonable or proper. General Code, Section 12603. No issue was made in the record as to whether the speed of fifteen or of twenty-five miles an hour was the proper speed at the point where this accident occurred. However, in either case, Cox had the right to assume that the automobile was being operated at the lawful rate of speed, instead of thirty-five to forty miles per hour. His failure to anticipate negligence upon the part of the
 
 *254
 
 driver does not constitute negligence
 
 per se.
 
 It was peculiarly difficult for Cox, facing the machine, accurately to estimate its speed. Moreover, Cox was not required to make accurate mathematical calculations of the speed of the machine.
 

 Bearing all these circumstances in mind, it was manifestly a question of fact as to whether the plaintiff walked blindly into danger, and that question of fact should have been submitted to the jury.
 

 The pedestrian had the right to presume that the motorist would conform to the statute.
 
 Norris, Ex’x.,
 
 v.
 
 Jones, Recr.,
 
 110 Ohio St., 598, 144 N. E., 274. This decision, in the third paragraph of the syllabus, holds:
 

 “A traveler upon a street in a village crossing the track of an interurban railway has a right to presume that the interurban railway will conform to an ordinance of the city council prohibiting the running of interurban cars through its limits at a rate of speed greater than that named in the ordinance. If the traveler acts in accordance with such presumption in the absence of knowledge of the fact that the interurban railway company is exceeding such speed limit in running an interurban car, such action upon the part of the traveler will not of itself constitute an act of negligence.
 
 Hart
 
 v.
 
 Devereux, Receiver,
 
 41 Ohio St., 565, approved and followed.”
 

 In this case the plaintiff testified that he walked across the viaduct, not knowing that the motorist was violating the speed limit. This testimony is uncontradicted upon the record, and hence the doctrine of the
 
 Norris case
 
 applies.
 

 The plaintiff in error, however, maintains that, since Cox’s witnesses stated that the machine was
 
 *255
 
 proceeding at from thirty-five to forty miles an hour, their knowledge of the speed of the on-coming automobile is imputed to Cox. How, as a matter of fact, their knowledge could be imputed to him, when they stood across the street and may have estimated the speed of the automobile by the distance that it ran after the collision, as well as by observing its ' on-coming rush, we do not understand. Moreover, upon what theory of law this proposition is based we are not told. The knowledge of an agent is imputed, under certain circumstances, to his principal. The knowledge of a director of a corporation, obtained by him while acting for the corporation, is in general held to be the knowledge of the corporation. 3 Thompson on Corporations (3d Ed.), Section 1779. That rule is based upon the reasonable presumption that business matters within the knowledge of the agent, obtained by him while acting for the principal, are as a matter of fact apt to be communicated to the principal. Here no such relationship and no such presumption exists. The knowledge of a driver of an automobile, operating such automobile for an employer, would doubtless be the knowledge of his principal. Here no such relationship existed between Cox and his witnesses. There was no obligation to communicate their knowledge resting upon the witnesses, no communication was in fact made, the witnesses were not acting for Cox in any way, and we hold that the knowledge of the witnesses as such was not imputed to, nor did it bind the injured party.
 

 This decision is not only in line with Ohio holdings, but also with the recent case law with regard to collisions between pedestrians and automobiles.
 
 *256
 
 51 L. R. A. (N. S.), 990, note. Without citing at length from numerous decisions, we call attention merely to the case of
 
 Murphy
 
 v.
 
 Phila. Rapid Transit Co.,
 
 285 Pa., 399, 132 A., 194, decided by the Supreme Court of Pennsylvania in 1926, which appears to us exactly in point with regard to these facts. In that case a pedestrian was killed by a street car in front of which he attempted to cross. He observed the car approaching sixty feet distant. It was urged that he was guilty of contributory negligence as a matter of law in attempting to cross in front of the on-coming car. The court, adverting to the fact that'the rights of the pedestrian and the street railway company are mutual, held that the pedestrian had a right to assume that the motorman on the street car approaching the street intersection would use due caution in controlling the car. The court stated that the failure of the decedent to anticipate the negligence of the motorman did not defeat the action, and held that the question whether the deceased was careless in attempting to cross the street at the intersection, after observing the car approaching sixty feet distant, was properly submitted to the jury. Judgment of the Court of Appeals affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Day, Kinkade, Robinson, Jones and Matthias, JJ., concur.