ASHWORTH, PLAINTIFF-APPELLANT, *v.* MORRISON, DEFENDANT-APPELLEE.

Ohio Appeals, Fourth District, Lawrence County.

No. 1001. Decided June 14, 1963.

Mr. J. Earl Pratt, for plaintiff-appellant.
Messrs. Andrews, Byrne, Edwards & Klein, Mr. H. M. Edwards, of counsel, for defendant-appellee.

(DUFFY, J., of the Tenth District, sitting by designation in the Fourth District.)

DUFFY, J. The plaintiff-appellant, a pedestrian, was struck by the defendant-appellee's truck after he attempted to cross U. S. Route 52 near Burlington, Ohio. A trial was had before a jury in the Common Pleas Court of Lawrence County, and a judgment was entered on the verdict for the defendant-appellee.

The plaintiff-appellant has appealed to this court, and has assigned the following as errors of the trial court:

"1. In excluding relevant material and competent evidence offered by the plaintiff-appellant.

"2. In refusing to grant a new trial after it was brought to the attention of the court that one of the nine jurors who signed the verdict was not a qualified elector of Lawrence County, Ohio, and consequently was not a qualified juror.

"3. The verdict of the jury was against the weight of the evidence.

"4. The verdict of the jury was contrary to law and the evidence.

"5. Other errors apparent on the face of the record."

The first assignment of error has to do with a statement allegedly made by the defendant-appellee to a relative of the plaintiff-appellant within two to five minutes after the accident occurred to the effect, "Don't worry, I have $50,000 in insurance." The evidence was proffered in a manner in which the jury did not overhear the statement, and the court sustained an objection to its introduction. The plaintiff-appellant alleges the proffered testimony amounted to an admission by the defendant-appellee that he was at fault and an admission that the plaintiff-appellant was not at fault.

We are of the opinion that the testimony was properly excluded as it is not an admission of guilt or of liability, nor can it be admitted as part of the res gestae. If the statement had included such an admission, it would have been proper to admit the statement even though the reference to insurance was contained in the statement.

The second assignment of error as to the nonresident juror was withdrawn by the attorney for the plaintiff-appellant at the time of argument.

The third and fourth assignments of error are overruled as the verdict of the jury was not against the weight of the evidence, nor was it contrary to law and the evidence.

At the time of argument the plaintiff-appellant asked the court to consider under its fifth assignment of error the special charge of the court given at the request of the defendant-appellee before argument on the unavoidable accident. The plaintiff-appellant declares that in view of the fact the pleadings allege negligence, contributory negligence, and sole negligence, the injection of inevitable or unavoidable accident into the charge of the trial court was reversible error. In support of his contention he has cited the cases of *Uncapher* v. *The Baltimore & Ohio Rd. Co.*, 127 Ohio St., 351, 188 N. E., 553; *Williams, a Minor,* v. *Burrell*, 43 Ohio App., 341, 182 N. E., 889; and *Knabb, Admr.,* v. *Scherer*, 45 Ohio App., 535, 187 N. E., 574.

Since the pleadings and the evidence in this lawsuit called for the trial court to charge only on negligence and contribu-

tory negligence, it was error for the court to charge on unavoidable accident as the defense of unavoidable accident can be considered only where it is alleged that none of the parties was negligent in any respect. See *Uncapher* v. *The Baltimore & Ohio Rd. Co., supra.*

The defendant-appellee contends that if it should be found that the charge as to unavoidable accident was error, under the circumstances in this case it was not prejudicial error because the jury did not accept the theory of unavoidable accident. Rather, by answers to four written interrogatories signed by nine of the 12 jurors, the jury found that the defendant-appellee was guilty of negligence in that "After seeing the old man in the road the driver should have proceeded with more caution," and also that the plaintiff-appellant was negligent in that "By seeing a vehicle approaching and then hesitating in the middle of the road." In view of the finding by the jury that the defendant-appellee was negligent and the plaintiff-appellant was guilty of contributory negligence, it must be concluded that the jury was not misled by the erroneous special charge on unavoidable accident, and such error under the circumstances was not prejudicial to the plaintiff-appellant.

The judgment of the trial court will be affirmed.

BROWN, P. J., concurs.
CARLISLE, J., dissents.

CARLISLE, J., dissenting. In my opinion the judgment of the trial court in this case should be reversed, a new trial ordered.

Since the other two judges concurred, their opinion will be the law of the case, and since I am dissenting I feel that it is particularly incumbent upon me to set further in detail the reasons for my dissent.

I first would like to review some of the undisputed facts from the complete record of the case which are as follows: On April 29, 1960, at about 5:00 o'clock P. M. the appellant (plaintiff below), a pedestrian 80 years of age at the time, was attempting to cross what is known as old U. S. Highway 52 from north to south at a point just west of the Village of Burlington, Lawrence County, Ohio; the appellee's (defendant

below) truck was being driven by him on said same route in an easterly direction, where the view is not obstructed for a distance of approximately 900 feet; the sun was shining at the time and it is a fact that said highway at this point runs almost due east and west; the court will take judicial notice of the further fact that at the time stated on the day stated above, the sun was to the back of the appellee, and would have been in the eyes of the appellant when he or anyone else would look in the direction from which the vehicle of said appellee was approaching; when the appellant had crossed the north half of the highway and had taken about two steps into the south lane he was struck by appellee's truck; the appellant before entering upon the highway saw appellee's truck about 900 feet away, and without question must have thought he had sufficient time to cross the said highway; he looked to the east and saw no vehicles approaching from that direction (R. 215).

The following testimony is disputed but for the purposes of this review or appeal we must assume that the appellee's version is true.

"The Appellant:

"Q. (R. 214.) Then after you started across the road did you look any more before you were hit?

"A. Not at all, after I looked there was no use to look again.

"Q. (Again on page 214.) Were you starting across the road when there was a vehicle coming way down in the dip?

"A. Well, I thought I had plenty of time to get across, it was way down in the dip.

"(From the undisputed testimony it is 900 feet from the point of impact to the bottom of the dip.) (R. 183.)

"The Appellee:

"Q. (R. 280.) As you approached the point of impact?

"A. Yes.

"Q. What did he do, what did Mr. Ashworth do?

"A. He walked out near the center of the highway and he stopped.

"Q. Is this site approximately where he was?

"A. Yes sir.

"Q. What did he do when he got to this point here?

508

"A. He was going toward the curb up east, then he looked back.

"Q. Do you know where he was looking?

"A. No.

"John Morrison, Witness for Appellee:

"Q. (R. 241.) He walked out the road to the center line?

"A. Yes sir and stopped.

"Q. Where?

"A. Right around the center line.

"Q. On which side of the center line was he, on the hill side or the river side?

"A. Well close to the center of the line, if it was on either side it would be toward the river.

"* * *.

"Q. You say he walked to the center line?

"A. Yes sir.

"Q. And he stopped?

"A. Yes sir.

"Q. How long did he hesitate there?

"A. Approximately, maybe two or three seconds.

"Q. In the meantime, when you first saw him he had moved from here to here and hesitated two seconds?

"A. Yes sir.

"Q. Then what did he do?

"A. He took two steps, stopped and threw up his hands."

The testimony of David Cole Leighty, another witness of appellee, on pages 261 and 262 of the record, is about to the same effect, but is even more indefinite than that of the two Morrison witnesses.

I have searched the record as diligently as any school boy would study his books, and I believe that there is no other evidence of any act of the appellant, or of any other fact or circumstance to be considered which would have any bearing on the question as to whether the appellant was guilty of contributory negligence. It is my opinion that the evidence in the record is insufficient as a matter of law on which to base a jury finding that the appellant was guilty of any negligence inducing his own injury.

But, let us look at the other side of the coin.

Since there was a general verdict for the appellee, that verdict would still stand unless there was no evidence to support the special finding of the jury that the appellee was guilty of negligence because, to use the language of the jury, "After seeing the old man in the road the driver should have proceeded with more caution." This finding is surely broad enough to permit the assumption that the jury had in mind several things that the appellee was negligent in doing or failing to do. He could have stopped and let the old man pass, or could have swerved so as to avoid hitting him. And the jury, I think, did believe that the driver was going too fast. The hood of appellee's truck was about five feet high. (R. 283 and plaintiff's Exhibit 22), and yet the appellant was thrown upon the top of the hood, where he rolled back to the windshield and then rolled off on the ground. In the meantime he was carried 30 feet on the hood. (R. 283 and 177.) Although the appellee testified (R. 278) that he was only 200 to 250 feet from appellant when he first saw him, the jury may with good reason have disbelieved this for the appellee himself testified (R. 64), in effect, that if he had been looking for the appellant, he imagines he could have seen him from seven or eight hundred feet before his truck struck him. The jury may have believed that appellee did see appellant seven or eight hundred feet away, and he "should have used more caution" after that.

So, in my opinion there is plenty of evidence to support the special finding of the jury regarding appellee's negligence.

The majority of this court holds that the trial court committed error in giving a charge to the jury on unavoidable accident and with this holding I agree. Then the majority opinion says that this error was not prejudicial because the answers of the nine jurymen to the special interrogatories show that the jury was not misled; that the jury found that both appellant and appellee were negligent and that this proves that the jury's verdict was not based on unavoidable accident. With this holding I disagree.

My reasons for disagreement with the latter finding of the majority are two-fold as follows: First, I find that every fact and circumstance proven by the evidence, giving the evidence the most favorable interpretation possible in favor of the ap-

pellee, does not make the appellant guilty of negligence. In other words, he was clear of negligence as a matter of law, and the jury could not lawfully find him guilty of negligence without evidence of legal negligence. Second, I believe that the reason for the rule against charging on matters not plead and not proven is much broader than that such charge might confuse the jury; it could influence, bias or prejudice the jury against one or the other of the parties; it is similar to the act of a trial judge in commenting on the evidence, or expressing an opinion as to the veracity of a witness. I hold that the giving of such charge is reversible error per se because it is impossible to decide just what effect it might have had on the thinking of the individual jurors in reaching a final verdict.

Now, taking up the legal questions and the authorities which I think support my position on these questions, I wish to call attention to some elementary principles of law as pronounced by the Ohio Courts.

What is and what is not negligence is sometimes a mixed question of law and fact. 52 Ohio Jurisprudence (2d), 580, Section 91. A mixed question of law and fact is always to be submitted to the jury for determination but under proper instruction from the court as to the law. If there is an issue of fact as to whether a defendant ran a red light, that is a pure issue of fact. If he did, he is guilty of negligence; if he did not, then he is not guilty of negligence. If one steps into a public road or highway without looking in both directions, he is guilty of negligence. This is because of Section 4511.49, Revised Code. But if a person walks across a privately owned plot of land without looking for automobiles and is struck by one, he cannot be charged with negligence, for he had a right to assume that no automobile would be there. He might be guilty of trespass but he could not be guilty of negligence through mere failure to look for an automobile, nor from failure to see it before it struck him. Of course, if the driver proved that the pedestrian saw him and deliberately walked into the path of the automobile, that would be contributory negligence. In my mind, the appellant in this case is in exactly the same position as the pedestrian whom we imagined above to have walked across a private plot of ground and is struck. Ohio Courts of

Appeals and the Supreme Court have repeatedly laid down the rule that a pedestrain has the right to assume that motorists will observe speed laws and other laws. "Every person in the lawful use of the highways in this state has the right to assume that every other person using said highways will do so in a lawful manner, in the absence or notice or knowledge to the contrary." *Blackford* v. *Kaplan*, 135 Ohio St., 268, 20 N. E. (2d), 522, 14 Ohio Opinions, 118; *Swoboda* v. *Brown*, 129 Ohio St., 512, 2 Ohio Opinions, 516, 196 N. E., 274. These same courts have also repeatedly held that a pedestrian, having once looked before entering a highway and judging it to be safe to cross, is not bound as a matter of law to look again. See *Trentman* v. *Cox*, 118 Ohio St., 247, 160 N. E., 715; *Goldberg* v. *Jordan*, 130 Ohio St., 1, 196 N. E., 775.

Of course, if there had been evidence to make this a mixed question of law and fact, then the question as to whether or not the appellant exercised due care should have been submitted to the jury. If the time had been in darkness for instance; or if it was or had been raining; or if the road had been icy so as to have made it extremely difficult for motorists to stop; or, suppose the appellant after looking both ways stepped into the road and, passing behind a bus, then proceeded without looking; any of these circumstances would have required the submission of the question of fact as to the defendant's contributory negligence to the jury.

But there is nothing in the record on which to base contributory negligence except that the appellant failed to look the second time.

The road was dry. The sun was shining. The road was straight. There was no traffic or other obstructions to block the view of either appellant or appellee. What was there to submit to the jury except an undisputed fact which the courts have said is not negligence?

But the jury found that the appellant hesitated in the middle of the road and appellee's witnesses not only say that he hesitated, but they say he looked in the direction of the oncoming truck. If this was true, it was an act of caution not an act of negligence. The appellant denies that he looked at all except the one time, and that was before he started across the

highway. So there is absolutely no proof that appellant saw appellee's truck except in the dip 900 feet away.

But let us assume that appellant did hesitate in the middle of the highway, as the jury says that he did. This was only, if true, something to excuse the appellant from negligence. If true, it might have misled the appellee and caused him to take his foot off the brake and increase speed. But the jury did not excuse appellee. It found him guilty of negligence, which indicates that the jury did not attribute his negligence to his being misled by the appellant's hesitation.

In view of the foregoing, I contend that the trial judge injected not just one but two matters into the case by his charge which did not belong there, namely: (1) contributory negligence and (2) unavoidable accident.

As above stated, it is my opinion that the error of the court in charging upon unavoidable accident was not cured by the fact that the jury found the appellant guilty of contributory negligence. This is true because the giving of such charge is an invasion of the province of the jury by the court, which is not tolerated. This principle is well stated in 52 Ohio Jurisprudence (2d), 579, as follows:

"The law does not countenance any invasion by the court of this province and function of the jury, by permitting it to determine questions of fact and to instruct the jury accordingly, any more than it permits the jury to invade the court's function * * *."

I also cite *Uncapher* v. *The Baltimore & Ohio Rd. Co.*, 127 Ohio St., 351, 188 N. E., 553, and the Annotations in 65 A. L. R. (2d), at page 12, regarding unwarranted instructions on unavoidable accident.

Finally, I believe the trial court committed prejudicial error in excluding the statement made by the appellee within five minutes after the collision: "Don't worry, I have $50,000 in insurance." It was a part of the res gestae, and it was for the jury to say what was in the mind of the appellee to cause him to make said statement.