ROBERTS, APPELLEE, *v.* MUTUAL MANUFACTURING & SUPPLY COMPANY ET AL., APPELLANTS.

(No. C-830505—Decided May 23, 1984.)

*Kondritzer, Gold & Frank Co., L.P.A.,* and *Mr. William E. Clements,* for appellee.

*Mr. Timothy L. Timmel,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County, Ohio.

The instant action was commenced by the plaintiff, Lillie P. Roberts, for injuries to her lower back and other parts of her body, future pain and suffering, and medical and hospital expenses she suffered as a result of an automobile accident between the plaintiff and the defendant Lawrence Klingenbeck on November 5, 1979. Defendants Mutual Manufacturing and Supply Company and Klingenbeck stipulated their responsibility for the accident, and that Klingenbeck, acting within the scope of his employment, was operating his vehicle at the time the accident occurred.

On May 4, 1983, following a trial by jury, a verdict was returned in favor of the plaintiff, in the amount of $27,500. Subsequently, plaintiff filed a "Motion for Interest on Judgment," seeking interest on the verdict from November 5, 1979, the date the accident occurred, until "the date upon which judgment is satisfied." A hearing on the motion was held on May 27, 1983, and on June 15, 1983, the court entered judgment on the verdict, and granted plaintiff prejudgment interest, "at Ten Percent (10%) per annum on the sum of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00) to accrue from November 3, 1981, until the date upon which the sum of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00) is paid."

From this judgment, defendants have taken this timely appeal, in which they assert four assignments of error for our review, as follows:

First Assignment of Error
"The Trial Court erred to the preju-

dice of defendants in admitting the life expectancy table into evidence and permitting it to go with the jury to be considered during deliberations."

### Second Assignment of Error

"The Trial Court erred to the prejudice of the defendants in overruling defendants [*sic*] motion for a directed verdict on the issue of future damages made at the close of all of the evidence."

### Third Assignment of Error

"The Trial Court erred to the prejudice of the defendants by instructing the jury on the issue of future damages after timely objection by the defendants."

### Fourth Assignment of Error

"The Trial Court erred to the prejudice of the defendant[s] in awarding Prejudgment Interest to the plaintiff back to the date that the action was filed."

We find the four assignments logically fall into two groups—the first consisting of those assignments addressing the allegedly erroneous conduct on the part of the trial court in dealing with plaintiff's claims for future damages (numbers one through three), and the second dealing with the trial court's award of prejudgment interest (number four). They will, accordingly, be addressed in that fashion.

### I

Initially, we note that in assessing prospective damages, a jury should be "confined to such as [are] * * * reasonably certain to follow from the injury complained of." *Pennsylvania Co.* v. *Files* (1901), 65 Ohio St. 403, 407. See, also, *Haase* v. *Ryan* (1955), 100 Ohio App. 285 [60 O.O. 251]; *Powell* v. *Montgomery* (1971), 27 Ohio App. 2d 112 [56 O.O.2d 279]. Furthermore, "[t]he general rule appears to be that 'if the injury is of an objective nature (such as the loss of an arm, leg, or other member) the jury may draw their conclusions as to future pain and suffering from that fact alone (the permanency of such injury being obvious); whereas there must be expert evidence as to future pain and suffering or permanency where the injury is subjective in character.' " *Cusumano* v. *Pepsi-Cola Bottling Co.* (1967), 9 Ohio App. 2d 105, 120 [38 O.O.2d 132], citing *Day* v. *Gulley* (1963), 175 Ohio St. 83, 86 [23 O.O.2d 382].

Plaintiff called two physicians to testify, by videotaped depositions, on her behalf: Dr. Michael Welch and Dr. Arthur L. Hughes.

Welch testified that he examined the plaintiff after she was involved in the car accident in question, and that he diagnosed her condition as a cervical lumbar sprain.[1] He further testified that based upon the history plaintiff gave, and upon his examination and treatment of her, as well as certain testing he performed, the diagnosed condition was, in his opinion,[2] causally related to the automobile collision which is the subject of this case. When questioned about his opinion as to whether plaintiff would "suffer any permanent difficulty or disability as a result of the conditions which [he] * * * diagnosed and treated," Welch replied that he thought that the plaintiff was "probably going to have some type of residual symptoms," but that he didn't "think it is going to be very significant." On redirect, he fur-

---

[1] Explaining that "[c]ervical is the neck, and lumbar is the small of the back," he stated that a cervical sprain "just means that the soft tissue, that being the muscles and ligaments running between the different bones of the spine, are stretched or pulled out of their normal shape." A lumbar sprain, he stated, is "[t]he same thing. Just the musculature, the ligaments and muscles in that area."

[2] Throughout the course of their testimony, both Drs. Welch and Hughes couched their opinions in terms of "a reasonable degree of medical certainty."

ther testified that he continued to see the plaintiff for back and leg pain, and that it was his opinion that some of the difficulty she was having probably was related to the accident.

Hughes testified that plaintiff was referred to him by Welch, and that his first examination of her on January 29, 1980, and the history she gave, led him to believe that the lower back and leg pain she suffered was due to the accident, and to suspect that "the pain was due mainly to muscle spasm in the low back muscles."

Hughes testified that in his opinion, "the treatment which [he gave plaintiff] * * * over the past three years is causally related to the accident." Furthermore, he testified that in his opinion, "based upon the experience that she has undergone over the past three years since the accident, * * * she in all likelihood will continue to have difficulties for some period in the future, but I don't know how long that may be." Expounding on those difficulties, he stated "[t]hat she will probably experience back pain with activity, particularly strenuous activity, for some period in the future." Plaintiff's prognosis, he testified, in his opinion, "would be for some continued pain in the future." When questioned as to his opinion as to the diagnosis of plaintiff's condition "which resulted from [the] * * * collision," Hughes testified that his diagnosis was chronic lumbar strain. He further testified that in his opinion, the diagnosed condition was caused by the accident in question, and nothing else.

We find the above-related testimony to be competent and credible evidence which created an issue of fact on the question of whether plaintiff would suffer future damages. See *Darnell* v. *Eastman* (1970), 23 Ohio St. 2d 13 [52 O.O.2d 76]. The matter, therefore, was properly one for the jury to decide, and their conclusion, based on the testimony of these two physicians, was not improper. See *Barnett* v. *Hills* (App. 1947), 50 Ohio Law Abs. 208. See, also, *Pierson* v. *Hermann* (1965), 3 Ohio App. 2d 398 [32 O.O.2d 533].[3] Construing the evidence most strongly in favor of the plaintiff, without considering the weight of the evidence or the credibility of the witnesses, *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282 [21 O.O.3d 177], we find that reasonable minds could reach a conclusion other than one adverse to the plaintiff based on the evidence before the court. See Civ. R. 50(A)(4). Accordingly, the trial court properly overruled defendants' Civ. R. 50 motion for a directed verdict at the close of all the evidence, and was correct in submitting the issue of future pain and disability, with proper instruction,[4] to the jury. Defendants' second and third assignments of error are overruled.

As to the court's admission of the life expectancy table into evidence,

---

[3] *Cf. Powell* v. *Montgomery, supra* (27 Ohio App.2d 112 [56 O.O.2d 279]), at 116, for its recitation of the statement that "some evidence of the future damage must be shown, in order to justify an award of future damages."

[4] The court instructed the jury on the issue of future damages as follows:

"Now Mrs. Roberts, in addition to her injuries up to this point, claims that her injuries are permanent and that she will suffer pain and disability in the future.

"As to such future damages, Mrs. Roberts is only entitled to compensation for what pain and suffering is reasonably certain to exist as a result of the accident.

"You are not to speculate about future damages. The law deals with probabilities, not possibilities. However, to the extent that Mrs. Roberts has established by a preponderance of the evidence that she will suffer pain and disability in the future, your verdict should include an amount which will fairly and reasonably compensate her for that future pain, suffering, and disability."

"[m]ortality tables have been accepted and considered competent evidence in Ohio for many years in an action for personal injuries, to show the probable duration of the life of an individual as bearing upon the financial loss and pecuniary damage by diminution of earning capacity." *Jarvis* v. *Hall* (1964), 3 Ohio App. 2d 321, 324 [32 O.O.2d 429]. The medical testimony as to the permanency of plaintiff's disability and future pain and suffering laid a proper foundation for admission of the life expectancy table into evidence. Defendants' first assignment of error is overruled.

II

We find defendants' last assignment of error, controverting the trial court's award of prejudgment interest, to be likewise without merit. The relevant statutory section, R.C. 1343.03(C), provides:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The court below made a specific finding that while the plaintiff did, the defendants did *not* make a good faith effort to settle the case when, conceding liability, they determined, contrary to the conclusions of plaintiff's doctors, that plaintiff's injuries and medical expenses were not related to the accident, and accordingly offered only "nuisance value" to settle the case. Noting defendants' argument that they should be able to assess on their own the merit of plaintiff's case, the court stated: "The obvious intent of the legislation was to encourage the resolution of disputes. If all that was necessary to satisfy the requirement of 'a good faith effort to settle' was a determination by the defendant that they did not accept the plaintiff's evidence, no case would ever be settled." The court accordingly concluded that defendants alone failed to make a good faith effort to settle the matter.

The question of whether or not a party fails to make a good faith effort to settle a case is a matter to be determined within the discretion of the court. *Cf. Koegel* v. *Koegel* (1982), 69 Ohio St. 2d 355 [23 O.O.3d 320], paragraph one of the syllabus, where the court stated that "[w]hether to award interest upon obligations arising out of the division of marital property is within the discretion of the trial court. * * *"

Our review of the record, with respect to the negotiations of the parties, convinces us that the trial court's express determination that the defendants did not make a good faith effort to settle the case in accordance with the meaning and intent of the statute in question was a decision made in the proper exercise of its discretion,[5] and was unattended by any abuse. Accordingly, we conclude in favor of the court's finding, and defendants' fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

---

[5] Prior to trial, defendants offered to settle the matter for $2,500, and on the day of trial, made a vague "offer to make an offer" for $5,000. We note that the evidence submitted by plaintiff shows both sums to be less than the total of her medical bills alone.

PALMER and KLUSMEIER, JJ., concur.

KEEFE, P.J., concurs separately.

KEEFE, P.J., concurring. I write as to the fourth assignment of error which remonstrates as follows:[6]

"The Trial Court erred to the prejudice of the defendant[s] in awarding Prejudgment Interest to the plaintiff [Lillie P. Roberts] back to the date that the action was filed."

The relevant statutory section, as faithfully referenced by my brothers, Judges Palmer and Klusmeier, is R.C. 1343.03(C), *quod vide*. The permissive authority which R.C. 1343.03(C) grants to a trial court to award interest on a judgment from the date the cause of action accrued to the date on which the money is paid is one which must be exercised with the greatest of circumspection. The award in effect amounts to a penalty upon the party who is required to pay the money if said party fails to make a good faith effort to settle the case in the face of a good faith effort on the part of the party to whom the money is to be paid. Determination of what is or what is not good faith in such causes as the matter *sub judice* is difficult, and the matter before us presents a very close case as to whether the "penalty" is justified. There are several factors which make this a close case as to whether the defendants acted in good faith, a significant one of which is the markedly minor nature of the automobile accident which plaintiff claimed caused her injuries.

I do not wish to expend many more words on this matter other than to note the facts that the plaintiff prayed for $505,290.39, was never willing to settle for anything less than $40,000, and the jury awarded her $27,500. If any reasonable meaningfulness is to be ascribed to the jury verdict, the lowest settlement figure which plaintiff ever would accept was considerably higher than the jury awarded her.

Ultimately, I elect to concur in the holding here that there is no demonstration of an abuse of discretion by the trial court. I write to emphasize my conviction that this is a close case as to whether the "penalty" should be imposed upon the defendants and, furthermore, to signify my belief that R.C. 1343.03(C) must steadfastly be applied to settlement negotiations with prudence and circumspection. I have discovered through many years of trial court experience that there are as many types of plaintiffs as defendants, and as I read R.C. 1343.03(C), "penalty" interest cannot lawfully be asessed against the party or parties required to pay the money unless the party or parties to whom the money is to be paid *also* make a good faith effort to settle a case.[7]

---

[6] I have nothing to add as to the other assignments of error.

[7] There is no question but that the trial judge awarded prejudgment interest. However, he seems to have given prejudgment interest only from the date of the filing of this action, which occurred sometime after the automobile accident. The statute authorizes prejudgment interest — if it is awarded at all — from the date of the accrual of the action, which here would be the date of the accident. Plaintiff fails to assert any error in this respect, and defendants are not prejudiced thereby.