## Horn v. Richardson
### [Cite as 7 AOA 44]

Case No. 11671
Montgomery County, (2nd)
Decided September 7, 1990

John R. Doll, Logothetis and Pence, 111 West
First Street, Suite 1100, Dayton, Ohio 45402-1156,
for Plaintiffs-Appellees/Cross-Appellants.

Andrew C. Storar of Pickrel, Schaeffer & Ebeling,
2700 Kettering Tower, Dayton, Ohio 45423, for
Defendants-Apellants/Cross-Appellees.

BROGAN, J.

Susan Horn brought suit against Earl Richardson and his employer, Hubet, Inc., for injuries she, sustained in an automobile accident. The jury found there to be comparative negligence, with Horn 45% at fault and Richardson 55% at fault. Accordingly, judgment was entered in favor of Horn. This matter is now before the court on the timely notice of appeal from said judgment by Richardson and Hubet, Inc. Appellants contend that the trial court erred by charging the on jury prospective damages, by permitting testimony that Horn was financially unable to continue physical therapy, and by having a judge who did not hear the case decide his new trial motion. Also before the court is a single cross-assignment of error by Horn, asserting that the trial court erred in not awarding her the costs of preparing discovery depositions. For reasons stated more fully below, we will remand this cause so that Richardson's new trial motion may be decided by the judge who heard the case, and with instructions to award deposition costs to Horn.

On March 12, 1986, the vehicles being driven by Horn and Richardson collided at the intersection of North Dixie Drive and Siebenthaler Avenue. Horn was traveling north-bound on North Dixie Drive, and was attempting to make a left turn onto Siebenthaler Avenue. While in the course and scope of his employment with Hubet, Inc., Richardson was traveling southbound on North Dixie Drive, and was attempting to proceed straight through the intersection. Horn claims that Richardson ran a red light. Richardson denies this, asserting that Horn failed to yield.

Horn was treated and released at Miami Valley Hospital for injuries to her neck and back that left her temporarily paralyzed below the waist. In the following months she continued to see various physicians, psychiatrists, and physical therapists, incurring medical bills of approximately $10,000. On her doctor's orders, Horn was unable to work at all until September of 1987. She was permanently prevented from continuing her old job as a medical assistant because her physicians felt that it was too physically taxing. Horn did not find new employment until March of 1988. The foregone income for this two year period was approximately $27,000.

Horn filed suit against Richardson and Hubet, Inc. seeking recovery for her injuries, pain and suffering, and lost wages. Horn's husband, Daniel, filed a derivative suit against the same defendants for loss of consortium.

The case was assigned to the Honorable Barbara Gorman, however, it was heard by a visiting judge, the Honorable Robert Nichols. The jury found Horns total damages to be $150,000, while her husband's damages were $30,000. Because of Horn's comparative negligence the judgment was reduced to $99,000. Richardson and Hubet, Inc. filed a motion for a new trial, which Judge Gorman overruled without referring it to Judge Nichols.

Richardson and Hubet, Inc. now appeal.

For their first assignment of error Richardson and Hubet, Inc. assert that:

"The lower court erred to the Prejudice of these appellants in charging the jury on the issue of prospective damages as there was insufficient evidence for the jury to consider that issue."

We do not agree.

The issue of prospective damages may only go to the jury if there is expert testimony that plaintiff is reasonably certain to incur future medical expenses. Day v. Gulley (1963), 175 Ohio St. 83; Pennsylvania Co. v. Files (1901), 65 Ohio St. 403; Roberts v. Mutual Manufacturing & Supply Co. (1984), 16 Ohio App. 3d 324.

We agree with appellants that Dr. David Weston's testimony that "some of the injuries

that she had may be permanent", Weston Deposition, pp. 42-43, does not rise to the level of reasonable certainty. However, at pages 41 to 42 of his deposition, Dr. Kenneth Glass testified as follows:

"Q. Okay. Can you tell the jury at this time how long your treatment of her will continue?

"A. I can't - I can't really say how long it will continue into the future. I'm sure that she will require treatment for the next - for the next six to twelve months at least.

"Q. Okay. That would be a conservative estimate on your part?

"A. That would be a conservative estimate, yes."

We find that this does constitute expert testimony that it is reasonably certain that Horn will incur future medical expenses. Therefore, the issue of prospective damages was properly given to the jury.

Appellants argue that the jury had no evidence before it of the monetary value of Horn's prospective damages. However, the jury did have evidence of the current costs of treatments that were to continue for "six to twelve months at least", as well as other current damages from which to extrapolate the value of Horn's future damages. Moreover, no interrogatories were submitted to the jury to see how much, if any, of the $150,000 in damages were prospective. Therefore, appellants cannot demonstrate their assigned error.

For their second assignment of error, Richardson and Hubet, Inc. assert that:

"The lower court erred to the prejudice of these appellants in permitting plaintiff to testify as to her financial inability to continue physical therapy, thereby invoking the sympathy of the jury."

We are not in accord.

The testimony in question ran as follows:

"Q. Did you ever get a chance to go back to a light-duty job there at the Montgomery Developmental Center?

"A. No.

"Q. Why not?

"A. There was just nothing. They didn't want-- If I couldn't go back to work in my own job classification, the State is very touchy about that.

"Q. At some point in time after you found that out, did you start looking for work elsewhere?

"A. Yes, I did.

"Q. Where did you find employment?

"A. I looked in the paper and I saw an ad for habilitation worker, and I called and it was Hope Homes. I spoke to Richard and had an interview.

"Q. Richard Hines, who testified earlier?

"A. Richard Hines, yes.

"Q. During this period of time, we're late '87 now when you your visit with Dr. Weston, were you having physical therapy during that period of time?

"A. No.

"Q. Why not?

"A. Well, number one, I couldn't afford it any longer.

"MR. BARNHART: We'll object to that, Your Honor.

"THE COURT: I'm going to overrule the objection. You may proceed.

"Q. [sic] Well, he understood this. I explained the situation with him. I couldn't afford it, and he really wasn't sure if it was going to do me any good."

T. p. 160-161.

Appellants argue that this testimony is irrelevant and could only have been intended to evoke the sympathy and passion of the jury. We do not agree. The explanation of why Horn discontinued her therapy goes to the issue of whether she failed to mitigate her damages. Horn also argues that since the question arose in the context of the continuation of her overall treatment, it was relevant to the issue of the permanency of her injury. It must also be remembered that the jury already knew that Horn was claiming that some degree of financial hardship arose from her injury, since she was asking for damages from her lost income.

It was within the trial court's discretion to decide whether the probative value of this testimony was substantially outweighed by the danger of unfair prejudice. Evid. R. 403(A). We cannot say that the trial court's decision on this matter was arbitrary, unreasonable, or capricious, and therefore we must overrule appellants' second assignment of error.

We are not persuaded by appellants' citation of *Book v. Erskine & Sons* (1951), 154 Ohio St. 391 and *Hudock v. Youngstown Municipal Ry. Co.* (1956), 164 Ohio St. 493, for the proposition that mere mention of a plaintiff's impecunious financial state is *per se* improper. *Hudock* involved a collateral issue of whether a husband was liable for his wife's medical bills. In *Book*, the plaintiff's attorney repeatedly argued to the

jury that plaintiff was poor while defendant was rich. This is not analogous to the instant case where Horn made one brief statement to explain her discontinuation of physical therapy, her attorney did not raise this issue during argument, and the defendants' financial status was not mentioned.

As their third and final assignment of error, Richardson and Hubet, Inc. assert that:

"Judge Gorman erred and abused her discretion in overruling the motion for a new trial as Judge Nichols tried the case and there was no showing as to his unavailability to rule on the motion."

Appellants assert that under Civ. R. 63(B) that Judge Gorman had the authority to rule on the new trial motion *only if* the administrative judge reassigned her to the case because Judge Nichols was "unable to perform the duties to be performed by the court after a verdict is rendered." We agree.

This is not a novel question. We have previously held that "reassignment (under Civ. R. 63(B)j is permitted only where there is a record showing of the assigned judge's inability to act." *Brown v. Brown* (1984), 15 Ohio App. 3d 45, 46, quoting *Berger v. Berger* (1981), 3 Ohio App. 3d 125, 129; accord see *Adkins v. Adkins* (1988), 43 Ohio App. 3d 95. In the instant case there is no showing in the record that visiting Judge Nichols is unable to act on the new trial motion, nor has Judge Gorman been reassigned to this matter. Therefore, the new trial motion should have been forwarded to the visiting judge who was assigned to the case. Any other holding would open the door to the most virulent type of forum shopping for post-judgment motions.

Appellant's third assignment of error is found to be well taken We note that our resolution of this assignment of error should not be construed as having expressed an opinion as to the merits of the new trial motion. This matter rests in the sound discretion of Judge Nichols.

In her sole assignment of error, Horn asserts in her cross-appeal that:

"The lower court erred in declining to assess against the defendants/appellants/cross-appellees the costs of the copies of the transcript of the depositions of Horn and Richardson as they were necessary and vital to the litigation."

The depositions in question are the discovery depositions of Horn and Richardson. Horn's deposition seems to have not been used at trial in any direct manner, while Richardson's deposition appears to have been used only once at trial for impeachment purposes (see T., p. 20). Richardson and Hubet, Inc. argue that this fact bars recovery of costs. We do not agree.

Richardson and Hubet, Inc. cite *Fairchild v. Lakeshore Electric Railway Co.* (1920), 101 Ohio St. 261 for the proposition that if depositions are unused at trial, the expense of taking them shall not be taxed as costs. However, a careful reading of *Fairchild* at 272 clearly indicates that the Supreme Court was limiting its ruling to depositions *de bene esse,* which are more commonly referred to today as *perpetuation of testimony* depositions. The *Fairchild* rationale is not applicable to *discovery* depositions, which are involved in the instant case. Since the sole reason for taking a perpetuation of testimony deposition is in the anticipation of a witness not being present at trial, the deposition serves no useful purpose to the litigation if it is not actually submitted at trial. A discovery deposition, on the other hand, serves many other necessary purposes other than its potential as a source of impeachment material at trial.

Therefore, *Fairchild* is not controlling in this instance. For similar reasons, we also find inapposite the Supreme Court's more recent statement in *Moore v. General Motors Corp.* (1985), 18 Ohio St. 3d 259, 261, that it is the "usual practice of courts in civil proceedings" not to tax as costs a deposition if it is not used in evidence. As in *Fairchild,* the depositions referred to in *Moore* were of the perpetuation of testimony type.

It is well settled that unless provided otherwise by statute, it is within the trial court's discretion to tax as costs any expense that was "necessary and vital to the litigation." *Jones v. Pierson* (1981), 2 Ohio App. 3d 447, 449. This has been interpreted by the same court to mean that the "court's discretion to disallow costs is limited to refusing to tax a litigating expense as a cost only where such expense is an unusual expense in type or amount which because of the prevailing party's conduct it is inequitable to assess against the non-prevailing party." *Bookatz v. Kupps* (1987), 39 Ohio App. 3d 36, 39, quoting *Horne v. Clemens* (1985), 25 Ohio App. 3d 44,46.

As to the application of these holdings to the question of depositions, the Cuyahoga County Court of Appeals stated that:

"[T]he taking of depositions is good legal practice and is essential to the preparation for trial. The denial of the expense of said depositions as costs, where neither unusual nor unreasonable, is an abuse of discretion on the part of the trial court." *Bookatz, supra,* at 39. The deposi-

tions referred to in *Bookatz* and *Horne* were discovery depositions which were not used at trial. We find the rationale expressed in these cases to be controlling in these instances.

In sum, unless the expense of preparation was unusual in type or amount, a deposition *which was not used at trial* shall be taxed as costs if it was a discovery deposition, but shall not be taxed as costs if it was a perpetuation of testimony deposition.

Richardson and Hubet Inc.'s first and second assignment of error are found to be not well taken and will be overruled.

Richardson and Hubet Inc.'s third assignment of error, as well as Horn's sole cross-assignment of error are found to be well taken and will be sustained. The judgment of the trial court will be affirmed in part and reversed in part and remanded to the trial court with instructions to award Horn the costs of depositions prayed for, to rule on the merits of the new trial motion.

WILSON, J., and FAIN, J., concur.