OPINION
Defendant-appellant, Motorists Mutual Insurance Company ("MMIC"), appeals a decision of the Butler County Court of Common Pleas on a declaratory action in favor of plaintiffs-appellees, Jan and Timothy Bergen ("the Bergens"), and a decision of the trial court to deny their motion for a new trial.
The Bergens were involved in an automobile accident on June 28, 1996. They sued the tortfeasor and received a settlement of $95,000; the tortfeasor's insurance policy limit was $100,000. On September 1, 1998, the Bergens filed a complaint against MMIC for underinsured motorist coverage on an automobile insurance policy. A jury trial was held on January 3, 2000. On January 7, 2000, the jury returned a verdict in favor of the Bergens in the amount of $575,211.08.
On January 28, 2000, the Bergens filed a declaratory judgment action seeking underinsured motorist coverage under two separate homeowner's policies they held with MMIC. In its answer, MMIC filed a counterclaim for a declaratory action requesting a declaration of the Bergens' obligation to pursue and explore other applicable coverage. MMIC also filed a motion for a new trial based on the jury's decision to award future medical expenses and future earnings to Jan Bergen.
The trial court issued a decision in favor of the Bergens on their declaratory judgment action. The court found that the Bergens were entitled to $100,000 from the automobile insurance policy,[1] in addition to coverage in the amount of $300,000 and $100,000 from two homeowner's policies. MMIC filed a motion for relief from judgment. The trial court denied the motion, denied the request for a new trial and dismissed the counterclaim for declaratory judgment.
MMIC appeals the decisions of the trial court and raises five assignments of error. The first two assignments of error involve the issue of future damages:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S OBJECTION TO THE EVIDENCE OF FUTURE LOST WAGES AND BY ALLOWING THE ISSUE OF FUTURE LOST WAGES TO BE DECIDED BY THE JURY IN THE ABSENCE OF A FOUNDATION OF MEDICAL TESTIMONY ESTABLISHING THE PLAINTIFF/APPELLEE'S ALLEGED INJURIES PREVENTED HER FROM WORKING IN THE FUTURE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN ALLOWING THE QUESTION OF FUTURE MEDICAL EXPENSES TO BE SUBMITTED TO THE JURY AND IN OVERRULING THE MOTION FOR A NEW TRIAL.
In the first assignment of error, MMIC argues that the trial court erred by allowing the jury to decide the issue of Jan Bergen's future lost earnings because the medical testimony did not establish that she would be unable to work in the future. At trial, MMIC objected to the admission of the testimony of Edward Berla, a vocational rehabilitation specialist. MMIC argues that Berla's testimony should have been excluded because none of Jan Bergen's treating doctors opined that she could not work at the time the case went to trial.
The general rule in Ohio with respect to future damages is that "a jury should be confined to such damages as are reasonably certain to follow from the injury complained of." Roberts v. Mut. Mfg. Supply Co. (1984), 16 Ohio App.3d 324, 325. Unless an injury is of an objective nature, where the permanency is obvious, the issue of a causal connection between future damages and the injury must be established by the opinion of medical witnesses competent to express such an opinion. Id.; Williamsv. Noden (Feb. 15, 1995), Summit App. No. 16857, unreported, 1995 WL 66356.
After the accident, Jan Bergen sought medical care from her family physician, Dr. Baker. She complained of problems with lack of neck movement, pain in her eye, blurring vision, dizziness and pain in her left shoulder and elbow. She was given sleep and pain medication. In the course of treatment, Dr. Baker referred her to Dr. Nell, a chiropractor, for complaints of pain, and to Dr. Schmerler, a neurologist, for headaches.
At the time of the accident, Jan Bergen was a registered nurse and worked as a nursing instructor at D. Russell Lee School. In the fall of 1996, after the accident, she returned to work, initially only four hours a day and eventually full time. She taught full time for five weeks, but continued to have pain and problems meeting her work load, and it began to effect her emotionally. She was referred to Dr. Hartford, a psychiatrist, and on his recommendation she reduced her work load. In addition, Dr. Nell referred her to the Pain Care Institute so that she could learn to cope with her pain.
Jan Bergen resigned her teaching position in fall 1997. She testified that she was unable to perform all the requirements of her position, particularly the clinical portion of her teaching, which required physical strength, and her co-workers resented taking over the work she was unable to perform.
She attempted to work in two other nursing positions. Although the job descriptions for these positions did not include heavy physical work, she was still required to perform other duties requiring physical work because the employers were understaffed. Jan Bergen resigned from both of these positions because she was unable to perform the duties required of her. She voluntarily gave up her nursing license because she felt that she could no longer safely practice as a nurse. At the time of trial, she testified that she was working as a data input clerk, making $7.75 per hour for thirty hours per week.
At trial, the jury heard the testimony of Dr. Baker and Dr. Nell regarding Jan Bergen's treatment for her injuries and for continuing pain. Dr. Nell testified that he referred Jan Bergen to the Pain Care Institute because her injuries were severe enough that they were permanent and he did not feel she was going to get much better. He testified that the injuries she sustained in the accident will limit her activities of daily living, and that she would have to alter things she does on the job to help her cope with the injuries so that the injuries are not aggravated.
At trial, the jury heard the deposition testimony of Dr. Hartford, who treated Jan Bergen until September 1997. He testified that she suffers from major depressive disorder, post-traumatic stress disorder and post-concussion disorder, and that these disorders are a result of the auto accident. He indicated that the treatment was necessary and that she would continue to need treatment. Dr. Hartford's prognosis indicated that she would need counseling for at least a year, with possible tapering of her medication and possible discontinuation within two years. However, Dr. Hartford stated that it was hard to say with certainty how long the treatment would need to continue. He indicated that although Jan was currently unable to work, he was hopeful that she would be able to work in the future, although it was difficult to put her return to work in a time frame.
At trial, Jan Bergen testified that she continues to experience eye pain, numbness and sensitivity, in addition to neck pain and limited neck movement. She indicated that she was still experiencing headaches and pain in her neck, her shoulders and down her spine. She testified that at the time of trial, she was treating with Dr. Nell for the pain, seeing a psychiatrist and taking anti-depressant medication.
Based on the above testimony, there was competent, credible evidence to submit to the jury regarding whether Jan Bergen would suffer future damages due to her accident. See Roberts, 16 Ohio App.3d 324, 325;Shelton v. Morgerson (Jan. 25, 1988), Preble App. No. CA87-05-014, unreported. There was testimony that her physical problems, including pain, were a result of the accident and that they were permanent. There was also testimony that her psychological problems were the result of the accident and that she would continue to need treatment.
MMIC's first assignment of error relates specifically to the issue of Jan Bergen's loss of earning capacity. The measure for damages for impairment of earning capacity is "the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter." Deyo v. Adjutant General'sDept. (Aug. 16, 1994), Franklin App. No. 93API12-1667, unreported, quoting Hanna v. Stoll (1925), 112 Ohio St. 344, 353. Edward Berla, vocational rehabilitation specialist, testified regarding two separate scenarios: first he discussed the loss of earning potential Jan Bergen would suffer due to her disability if she returned to nursing; second he discussed the earning potential Jan Bergen would suffer if she did not return to nursing and was instead employed in semi-skilled to skilled work of a sedentary nature. It should be noted that although MMIC argues that there was no medical testimony that Jan Bergen was unable to work, this was not the basis of her claim. Instead, she argued that due to her permanent injuries, she suffered a loss of earning potential. Because there was medical evidence of permanent injuries affecting her ability to perform her employment duties, the trial court did not err by allowing the Bergen's vocational expert to testify and allowing the jury to decide whether Jan Bergen suffered a loss of earning potential. MMIC's first assignment of error is overruled.
In the second assignment of error, MMIC argues that the trial court erred by allowing the jury to decide the issue of future medical expenses and by overruling the motion for a new trial on the issue. MMIC contends that there was no competent, credible evidence upon which the jury could calculate future medical expenses.
The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 rests in the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. Sharp v. Norfolk Western. Ry. Co. (1995), 72 Ohio St.3d 307, 312; an abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
As mentioned above, the evidence was sufficient to show that Jan Bergen suffered permanent injuries from the accident. The evidence also established that she was still treating with a psychiatrist and with Dr. Nell for the injuries and that she was continuing to take medication. Although there was no specific testimony on the exact cost of the continuing treatment, Jan Bergen's past medical bills were submitted. These documents gave concrete figures which the jury could use to calculate the cost of future treatment. The trial court did not abuse its discretion by overruling MMIC's motion for a new trial. MMIC's second assignment of error is overruled.
MMIC's third and fourth assignments of error relate to the trial court's decisions regarding the issue of whether their homeowner's insurance policy included coverage for the automobile accident:
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN FINDING UNDERINSURED MOTORIST COVERAGE IN THE HOMEOWNER'S CONTRACTS.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED IN DETERMINING THE AMOUNT OF COVERAGE UNDER THE HOMEOWNER'S INSURANCE CONTRACTS.
In the third assignment of error, MMIC argues that the trial court erred by finding that the homeowner's insurance contracts provided underinsured motorist coverage. The trial court's decision was based on language in the homeowner's policies that provided coverage for "motorized land conveyance designed for recreational use." The trial court reasoned that this language fit within the definition of "motor vehicle" provided in R.C. 4501.01-(B) and therefore the homeowner's policy provided motor vehicle coverage. The trial court found that because the policies provided motor vehicle coverage, uninsured/underinsured motorist coverage ("UM/UIM") arose by operation of law. See Selander v.Erie Ins. Group (1999), 85 Ohio St.3d 541.
While the instant case was pending, the Ohio Supreme Court issued a decision in which they considered whether UM/UIM coverage existed by operation of law in a homeowner's policy. Davidson v. Motorists MutualInsurance Co. (2001), 91 Ohio St.3d 262. The court found that "[a] homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C.3937.18 to offer uninsured and underinsured motorist coverage." Id. at syllabus.
The language of the homeowner's policy at issue in this case is identical to the language in the homeowner's policy at issue inDavidson. Based on the Supreme Court's decision in Davidson, the trial court erred in finding UM/UIM coverage existed by operation of law in this case. MMIC's third assignment of error is sustained.
In its fourth assignment of error, MMIC argues that the trial court erred by failing to provide for a setoff of the tortfeasor's limits from each of the two homeowner's policies. Because we have found that homeowner's policies do not provide UM/UIM coverage on these facts and the Bergens are not entitled to such coverage, this assignment of error is moot.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED BY DISMISSING, ON ITS OWN MOTION, APPELLANT'S COUNTERSUIT FOR DECLARATORY JUDGMENT, THEREBY DENYING APPELLANT DUE PROCESS OF LAW.
In the fifth assignment of error, MMIC argues that the trial court erred by dismissing its countersuit for a declaratory judgment. MMIC's request for a declaratory judgment asked the court to find that the Bergens were required to exhaust all other applicable coverage, including any available coverage pursuant to Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660, before collecting under MMIC's insurance policies.
The underinsured motorist provision of the Bergen's automobile insurance policy states that MMIC "will pay coverage only if * * * the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements." This provision requires the Bergens to exhaust all applicable bodily injury tort liability bonds or policies before recovering under their underinsured coverage with MMIC.
We agree with the trial court that the policy language applies only to third-party liability in tort. Although underinsured claims arise out of tortious conduct, the claims themselves are contractual in nature. Landisv. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 341. Under the policy, the Bergens were required only to exhaust all claims against the tortfeasor, not all other claims of contractual coverage, before seeking underinsured motorist coverage under their policy with MMIC. MMIC's fifth assignment of error is overruled.
In conclusion, the trial court's decisions on the issue of future damages are affirmed. The trial court's decision that the Bergens are entitled to recover UIM coverage from their homeowner's policies is reversed. The trial court's decision that the Bergens were not required to exhaust coverage under other UIM policies is affirmed. The Bergens are entitled to recover UIM coverage under their automobile policy in the amount of $100,000, which represents the coverage amount of $200,000 minus a set-off of $100,000 for the amount of the tortfeasor's policy limits.
 JUDGMENT ENTRY
The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and this cause is remanded to the trial court for further proceedings according to law and not inconsistent with the opinion filed the same date as this judgment entry.
It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed 50% against appellant and 50% against appellees.
VALEN and WALSH, JJ., concur.
 __________________________________ William W. Young, Presiding Judge
[1] The trial court found that the Bergens were entitled to coverage under the automobile policy in the amount of $200,000, minus a set-off of $100,000 for the amount of the tortfeasor's policy limit.